UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

RANDY BEASLEY,

                      Petitioner,              Case No. 2:17-cv-194

v.                                   Honorable Paul L. Maloney

DANIEL LESATZ,

                      Respondent.

_____/

## REPORT AND RECOMMENDATION

This is a habeas corpus action brought by a state prisoner under 28 U.S.C. § 2254. Petitioner Randy Beasley is incarcerated with the Michigan Department of Corrections at the Baraga Correctional Facility (AMF) in Baraga, Michigan. Following a two-day jury trial in the Baraga County Circuit Court, Petitioner was convicted of assault of a prison employee, Mich. Comp. Laws § 750.197c. On October 29, 2015, the court sentenced Petitioner to a prison term of 2 to 5 years, to be served consecutively to the prison term he was serving at the time he committed the assault.

On November 16, 2017, Petitioner filed his habeas corpus petition raising one ground for relief:

> Mr. Beasley was denied the presumption of innocence by holding his trial in a prison which violated his rights to due process under US Const, AMS VI, XIV and Const 1963, Art 1, § 17.

(Pet., ECF No. 1, PageID.5.) Respondent has filed an answer to the petition (ECF No. 10) stating that the Petitioner's request for relief should be denied because it was waived, procedurally defaulted, and meritless. Upon review and applying the standards of the Antiterrorism and Effective Death Penalty Act of 1996, Pub. L. 104-132, 110 Stat. 1214 (AEDPA), I find that the

ground asserted is procedurally defaulted and without merit.  Accordingly, I recommend that the petition be denied.

The facts underlying Petitioner's prosecution were, essentially, undisputed.  On November 14, 2014, AMF Corrections Officers Byron Ahola and Noah Beesley were escorting Petitioner a few dozen feet from the shower—where Petitioner had become agitated—to Petitioner's cell.  Petitioner was in hand restraints which were chained together behind his back. Officer Beesley held on to a two-foot-long leather "leash" that was attached to the restraints. During the short trip, Petitioner reared back and lunged at Officer Beesley in an attempt to head-butt the officer.  Petitioner did not succeed in making contact because Officer Beesley jumped back.

Officers Beesley and Ahola and, eventually, other officers subdued Petitioner. Petitioner was charged with assaulting Officer Beesley.

Petitioner trial was conducted in a courtroom at AMF.  Although the conduct of Twelfth Circuit Court trials at AMF may be routine, the conduct of trials in Michigan's dozens of other correctional facilities is not.  AMF houses hundreds of maximum-security prisoners.[1]  Before AMF opened, the Twelfth Circuit Court, concerned about the adequacy of its facilities and its ability to provide appropriate security for the public and its employees, designated the AMF courtroom as a location where regular terms of the court might be held.  (*See* Baraga Cty. Cir. Ct. Admin. Order 1993-1, ECF No. 11-10, PageID.565-566.)  Such a designation, with the approval of the state court administrator and the board of commissioners from each county within the circuit, is authorized by Mich. Comp. Laws § 600.1517.

---

[1] Although AMF's population includes hundreds of Level V prisoners, Level V prisoners are not a significant portion of the Michigan Department of Corrections prisoner population.  *See* MDOC 2015 Statistical Report, Chart C, available at https://www.michigan.gov/documents/corrections (last visited Dec. 16, 2018).

At Petitioner's trial, the correctional facility figured prominently into the *voir dire* questioning, first, because it presented an atypical location for a trial and, second, because the County of Baraga has a population of less than 9,000[2] and AMF employs hundreds[3]—one of the prospective jurors had worked there and several of the prospective jurors were close to others who worked there.  The prosecutor and defense counsel explored potential biases that might follow from Plaintiff being a prisoner and from the trial taking place in a prison.  Where jurors could not set aside those biases, they were excused.  Moreover, when two jurors inadvertently saw Petitioner in shackles, they were excused.

After preliminary instructions, Officers Beesley and Ahola testified.  A Michigan State Trooper who investigated the claim also testified.  Then, an AMF inspector testified regarding the video surveillance system at AMF.  He authenticated a video of the incident.  The jury watched the video.  Finally, Petitioner testified.  His testimony focused on wrongs perpetrated against him before and after the fact, rather than the attempted head-butt.

The jury deliberated for about twenty minutes before rendering a verdict of guilty.

Petitioner's contention that his trial was unfair is based entirely on the location of the trial.  Petitioner contends that holding his trial at a maximum-security correctional facility compromised the presumption of innocence guaranteed by the Sixth Amendment.

Petitioner, with the assistance of appointed appellate counsel, directly appealed the judgment to the Michigan Court of Appeals.  He raised the same issue he raises in this Court.  The court of appeals denied relief, initially by unpublished opinion issued October 13, 2016 (Mich. Ct. App. Op., ECF No. 11-10, PageID.491-494), and then again on reconsideration by order entered

---

[2] The United State Census Bureau estimates the population of Baraga County as of July 1, 2017, to be 8,441.  *See* https://factfinder.census.gov/faces/tableservices/jsf/pages/productview.xhtml?src=bkmk (last visited Dec. 16, 2018).

[3] As of December 19, 2015, the MDOC reports that AMF employs 298 people.  *See* MDOC 2015 Statistical Report, Table F12, available at https://www.michigan.gov/documents/corrections (last visited Dec. 16, 2018).

December 9, 2016 (Mich. Ct. App. Order, ECF No. 11-10, PageID.623).  Petitioner then, again

with the assistance of counsel, raised the same issue in an application for leave to appeal in the

Michigan Supreme Court.  That court denied relief by order entered June 27, 2017.  (Mich. Order,

ECF No. 11-11, PageID.624.)  This petition followed.

       This action is governed by the Antiterrorism and Effective Death Penalty Act of

1996, Pub. L. 104-132, 110 Stat. 1214 (AEDPA).  The AEDPA "prevents federal habeas 'retrials'"

and ensures that state court convictions are given effect to the extent possible under the law.  *Bell*

*v. Cone*, 535 U.S. 685, 693-94 (2002).  An application for writ of habeas corpus on behalf of a

person who is incarcerated pursuant to a state conviction cannot be granted with respect to any

claim that was adjudicated on the merits in state court unless the adjudication:  "(1) resulted in a

decision that was contrary to, or involved an unreasonable application of, clearly established

federal law as determined by the Supreme Court of the United States; or (2) resulted in a decision

that was based upon an unreasonable determination of the facts in light of the evidence presented

in the state court proceeding."  28 U.S.C. § 2254(d).  This standard is "intentionally difficult to

meet."  *Woods v. Donald*, 575 U.S. __, 135 S. Ct. 1372, 1376 (2015) (internal quotation omitted).

       The AEDPA limits the source of law to cases decided by the United States Supreme

Court.  28 U.S.C. § 2254(d).  This Court may consider only the holdings, and not the dicta, of the

Supreme Court.  *Williams v. Taylor*, 529 U.S. 362, 412 (2000); *Bailey v. Mitchell*, 271 F.3d 652,

655 (6th Cir. 2001).  In determining whether federal law is clearly established, the Court may not

consider the decisions of lower federal courts.  *Williams*, 529 U.S. at 381-82; *Miller v. Straub*, 299

F.3d 570, 578-79 (6th Cir. 2002).  Moreover, "clearly established Federal law" does not include

decisions of the Supreme Court announced after the last adjudication of the merits in state court.

*Greene v. Fisher*, 565 U.S. 34 (2011).  Thus, the inquiry is limited to an examination of the legal

landscape as it would have appeared to the Michigan state courts in light of Supreme Court precedent at the time of the state-court adjudication on the merits. *Miller v. Stovall*, 742 F.3d 642, 644 (6th Cir. 2014) (citing *Greene*, 565 U.S. at 38).

A federal habeas court may issue the writ under the "contrary to" clause if the state court applies a rule different from the governing law set forth in the Supreme Court's cases, or if it decides a case differently than the Supreme Court has done on a set of materially indistinguishable facts. *Bell*, 535 U.S. at 694 (citing *Williams*, 529 U.S. at 405-06). "To satisfy this high bar, a habeas petitioner is required to 'show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.'" *Woods*, 135 S. Ct. at 1376 (quoting *Harrington v. Richter*, 562 U.S. 86, 103 (2011)). In other words, "[w]here the precise contours of the right remain unclear, state courts enjoy broad discretion in their adjudication of a prisoner's claims." *White v. Woodall*, 572 U.S. 415, 424 (2014) (internal quotations omitted).

The AEDPA requires heightened respect for state factual findings. *Herbert v. Billy*, 160 F.3d 1131, 1134 (6th Cir. 1998). A determination of a factual issue made by a state court is presumed to be correct, and the petitioner has the burden of rebutting the presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1); *Lancaster v. Adams*, 324 F.3d 423, 429 (6th Cir. 2003); *Bailey*, 271 F.3d at 656. This presumption of correctness is accorded to findings of state appellate courts, as well as the trial court. *See Sumner v. Mata*, 449 U.S. 539, 546 (1981); *Smith v. Jago*, 888 F.2d 399, 407 n.4 (6th Cir. 1989).

The Michigan Court of Appeals rejected Petitioner's claim based on the court's conclusion he had waived it or forfeited it. "Waiver is the intentional relinquishment or

abandonment of a known right, whereas forfeiture concerns a failure to timely assert a right."
(Mich. Ct. App. Op., ECF No. 11-10, PageID.492.)  The distinction was important to the state
appellate court because the court's review would be different if the issue were waived rather than
forfeited.  An issue that has been waived is not reviewable on appeal, an issue that has been
forfeited is reviewed for plain error.  (*Id*., PageID.492-493.)  The court concluded Petitioner had
waived the issue; however, it also concluded there was no plain error if, instead, he had only
forfeited the issue.  (*Id*.)

   Whether Petitioner waived or forfeited his claim, his failure to raise it in the trial
court constitutes a procedural default that could preclude habeas review.  When a state-law default
prevents further state consideration of a federal issue, the federal courts ordinarily are precluded
from considering that issue on habeas corpus review.  *See Ylst v. Nunnemaker*, 501 U.S. 797, 801
(1991); *Engle v. Isaac*, 456 U.S. 107 (1982).  To determine whether a petitioner procedurally
defaulted a federal claim in state court, the Court must consider whether: (1) the petitioner failed
to comply with an applicable state procedural rule; (2) the state court enforced the rule so as to bar
the claim; and (3) the state procedural default is an "independent and adequate" state ground
properly foreclosing federal habeas review of the federal constitutional claim.  *See Hicks v. Straub*,
377 F.3d 538, 551 (6th Cir. 2004); *accord Lancaster*, 324 F.3d at 436-37; *Greer v. Mitchell*, 264
F.3d 663, 672 (6th Cir. 2001); *Buell v. Mitchell*, 274 F.3d 337, 348 (6th Cir. 2001).  In determining
whether a state procedural rule was applied to bar a claim, a reviewing court looks to the last
reasoned state-court decision disposing of the claim. *See Ylst*, 501 U.S. at 803; *Guilmette v. Howes*,
624 F.3d 286, 291 (6th Cir. 2010).

   The Michigan Court of Appeals applied the "contemporaneous objection" rule to
bar consideration of Petitioner's claim on appeal.  The rule requires defendants in criminal cases

to preserve their claims by objecting on the same ground in the trial court. *People v. Grant*, 520 N.W.2d 123, 130 (Mich. 1994).  "Michigan's contemporaneous-objection rule is both a well-established and normally enforced procedural rule." *Taylor v. McKee*, 649 F.3d 446, 451 (6th Cir. 2011) (failure to pose a contemporaneous objection to shackling).  The appellate court's alternative "plain error review of [the] procedurally defaulted claim [did] not waive the procedural default." *Awkal v. Mitchell*, 613 F.3d 629, 648 (6th Cir. 2010) (en banc).

Because Petitioner procedurally defaulted his federal claim in state court, the petitioner must demonstrate either (1) cause for his failure to comply with the state procedural rule and actual prejudice flowing from the violation of federal law alleged in his claim, or (2) that a lack of federal habeas review of the claim will result in a fundamental miscarriage of justice.  *See House v. Bell*, 547 U.S. 518, 536 (2006); *Murray v. Carrier*, 477 U.S. 478, 495 (1986); *Hicks*, 377 F.3d at 551-52.[4]

To show cause sufficient to excuse a failure to raise claims, Petitioner must point to "some objective factor external to the defense" that prevented him from raising the issue in his first appeal.  *Murray*, 477 U.S. at 488; *see McCleskey v. Zant*, 499 U.S. 467, 497 (1991).  Factors that may establish cause include interference by officials, attorney error rising to the level of ineffective assistance of counsel, and a showing that the factual or legal basis for a claim was not reasonably available.  *Cvijetinovic v. Eberlin*, 617 F.3d 833, 837 (6th Cir. 2010) (citing *Hargrave-Thomas v. Yukins*, 374 F.3d 383, 388 (6th Cir. 2004) (citing *McClesky v. Zant*, 499 U.S. 467, 493-94 (1991) (quotations omitted)).  A claim may be sufficiently novel to excuse a default if, at the

---

[4] The miscarriage-of-justice exception only can be met in an "extraordinary" case where a prisoner asserts a claim of actual innocence based upon new reliable evidence.  *House*, 547 U.S. at 536. A habeas petitioner asserting a claim of actual innocence must establish that, in light of new evidence, it is more likely than not that no reasonable juror would have found petitioner guilty beyond a reasonable doubt.  *Id.* (citing *Schlup v. Delo*, 513 U.S. 298, 327 (1995)).  There is no claim of actual innocence here.

time of the default, the basis for the legal claim was not yet in existence.  *See Cvijetinovic v. Eberlin*, 617 F.3d 833, 837-38 (6th Cir. 2010) (citing *Reed v. Ross*, 468 U.S. 1, 16 (1984), and *Engle v. Isaac*, 456 U.S. 107, 130-33 (1982)).

The only "cause" Petitioner offers for his failure to object is his lack of knowledge—he did not know he could ask to be tried somewhere else.  Petitioner's ignorance does not suffice to serve as cause to excuse a procedural default.  *See Hannah v. Conley*, 49 F.3d 1193, 1197 (6th Cir. 1995) ("a petitioner's pro se status and ignorance of his rights do not constitute cause"); *Bonilla v. Hurley*, 370 F.3d 494, 498 (6th Cir. 2004) ("[Petitioner's] ignorance of the law and procedural requirements . . . is insufficient to establish cause to excuse his procedural default.").  Where a petitioner fails to show cause, the court need not consider whether he has established prejudice.  *See Engle*, 456 U.S. at 134 n.43; *Leroy v. Marshall*, 757 F.2d 94, 100 (6th Cir. 1985).  Accordingly, because Petitioner's claim is procedurally barred, his application for habeas review should be denied.

If Petitioner's claim were not procedurally barred, it would fail on the merits.  There are no United States Supreme Court cases that consider whether trial in a prison might unconstitutionally interfere with the presumption of innocence.[5]  The Sixth Circuit faced the issue—based on a trial in the AMF courtroom—in *Ruimveld v. Birkett*, 404 F.3d 1006 (6th Cir. 2005).  The *Ruimveld* court considered the state's appeal granting a conditional writ of habeas corpus based on the shackling of Petitioner during a trial in the AMF courtroom.  The court affirmed the grant of the conditional writ.  For that reason, it did not address the other grounds Ruimveld had raised, including the constitutional propriety of trying Ruimveld in the prison

---

[5]The only cases Petitioner cites that directly address the issue of trial in prison are from the state courts.  Some courts have upheld the practice; others have rejected it under the state or federal constitution.  *See Lilly v. Texas*, 365 S.W.3d 321, 330 n.10 (Tex. Crim. App. 2012) (collecting cases).

courtroom. *Ruimveld*, 404 F.3d at 1018. The district court had considered and rejected Ruimveld's claim that his prison trial was unconstitutional. *Ruimveld v. Birkett*, No. 5:03-cv-60030, slip op at 36-38 (E.D. Mich. June 2, 2004).

Because there is no clearly established federal law directly on point, Petitioner cannot meet the requirement that he demonstrate the state court's determinations are contrary to, or an unreasonable application of, clearly established federal law.

In the absence of clearly established federal law regarding prison courtrooms, Petitioner has analogized his case to other trial situations implicating the presumption of innocence: prison clothing, shackles, and the presence and location of courtroom security officers. Clearly established federal law governs each of those situations.

In *Estelle v. Williams*, 425 U.S. 501 (1976), the Supreme Court considered whether an accused who is compelled to wear identifiable prison clothing at his trial by a jury is denied due process. The court concluded that "the State cannot, consistently with the Fourteenth Amendment, compel an accused to stand trial before a jury while dressed in identifiable prison clothes . . . ." *Id*. at 512. To avoid undermining the presumption of innocence, the court called upon trial courts to "do the best they can to evaluate the likely effects of a particular procedure, based on reason, principle, and common human experience." The court recognized that the accused's prison garb would serve as a "constant reminder" that might "affect a juror's judgment" and operate as "a continuing influence throughout the trial . . . ." *Id*. at 504-05.

Despite those concerns, the court did not create a per se rule. Indeed, the court acknowledged a couple of reasons prison garb might not interfere with the presumption of innocence, both of which are applicable to Petitioner. The court noted that where a defendant is charged with a crime committed in prison, the wearing of prison garb would not have a meaningful

impact on the jury because "'where the defendant is on trial for an offense allegedly committed while he was in prison . . . the jury would learn of his incarceration in any event.'" *Id*. at 507. "'No prejudice can result from seeing that which is already known.'" *Id*.

The court also held there was no constitutional problem with trying a defendant clad in prison garb if the defendant did not object. The constitutional infirmity occurs when a defendant is compelled to wear prison garb. *Id*. at 512. Where a defendant fails to object, "for whatever reason . . . [the failure] is sufficient to negate the presence of compulsion necessary to establish a constitutional violation." *Id*. at 512-13 (footnote omitted). It is for that reason, that the court concluded there was no constitutional problem in Williams' case even though he was tried in jail clothing—he never objected.

In *Holbrook v. Flynn*, 475 U.S. 560 (1986), the Supreme Court applied the *Estelle v. Williams* analysis to another practice that might "pose . . . a threat to the 'fairness of the factfinding process' . . . : the conspicuous, or at least noticeable, deployment of security personnel in a courtroom during trial . . . ." *Id*. at 568. Although the *Holbrook* court acknowledged the possible prejudice that might result from the placement of four state troopers behind Flynn during the trial, it reversed the appellate court's grant of the writ because the practice was not inherently prejudicial and Flynn had shown no prejudice.

In *Deck v. Missouri*, 544 U.S. 622 (2005), the Supreme Court looked to its decisions in *Estelle v. Williams* and *Holbrook* to assess the fairness of compelling a defendant to appear at trial in shackles. In *Deck*, the court noted that, for all of the reasons prison garb and conspicuous courtroom security measures are a problem, shackles are a problem too. Nonetheless, despite the problems inherent in the use of visible shackles, states are still permitted to use them in the presence of special needs. *Deck*, 544 U.S. at 626. Moreover, where the shackles are not visible,

states may use them routinely.  *See, e.g., Leonard v. Warden, Ohio State Penitentiary*, 846 F.3d 832, 842 (6th Cir. 2017) ("'[V]isible' marks the key inquiry for us because a claim based on *Deck* 'rises or fall on the question of whether the [restraint] was visible to the jury.'"); *Adams v. Bradshaw*, 826 F.3d 306, 317 (6th Cir. 2016) ("[T]he visibility of a physical restraint upon a defendant to a jury [is] a critical factor to obtaining relief in such circumstances."); *Earhart v. Konteh*, 589 F.3d 337, 348 (6th Cir. 2009) ("Because the Supreme court had stressed 'at least six times' the limitation of its holding to visible restraints, we held that *Deck* 'concerned only *visible* restraints at trial.'") (citation omitted, emphasis in original); *Mendoza v. Berghuis*, 544 F.3d 650, 655 (6th Cir. 2008) ("Mendoza's restraints were not visible to the jury during trial.  And the clearly established precedent upon which he relies—namely *Deck*—is expressly limited to cases where the defendant's shackles are 'visible to the jury' during trial.") (citation omitted, emphasis in original).

If *Estelle v. Williams*, *Holbrook*, and *Deck* are the clearly established federal law against which the Michigan Court of Appeals decision is measured, Petitioner has failed to meet his burden.  Petitioner never objected to holding his criminal trial in the prison.  His silence obviates any possible unconstitutional taint under *Estelle v. Williams*.

Moreover, the application of "reason, principle, and common human experience" counseled in *Estelle v. Williams* and carried out in *Holbrook* suggest that in a prosecution against a prisoner, for a crime committed in a prison, captured on video, and where safety concerns required the prisoner to be restrained even for a short walk from shower to cell, a juror is not going to be unduly reminded that the defendant is a prisoner simply because the trial is in a prison.  That is particularly true where the key evidence in the trial is a video recording of Petitioner apparently attempting a violent assault despite being restrained.  Those are the types of circumstances where

the Supreme Court indicated it might no longer be problematic to compel the defendant to wear

prison garb, display conspicuous courtroom security, or visible shackles because "'[n]o prejudice

can result from seeing that which is already known.'"  *Estelle*, 425 U.S. at 507.

As part of its plain error analysis, the Michigan Court of Appeals considered

whether conducting the trial in the prison seriously affected the fairness, integrity, or public

reputation of the judicial proceedings.  The court concluded it did not:

> We first note that because defendant was charged with assault of a prison employee,
> the jury was instructed that the prosecution had to prove that defendant was
> confined at the prison, that he was confined there legally, and that defendant
> assaulted a prison employee, all of which elements were supported by abundant
> evidence submitted by the prosecution.  Accordingly, even had this case been tried
> in a regular courtroom at the county courthouse, the jury would still have been fully
> aware of defendant's connection to the prison and his incarceration.  Also, as
> touched on briefly above, the trial court, prosecutor, and defense counsel essentially
> made a concerted effort to determine whether prospective jurors had the ability or
> capacity to give defendant a fair trial considering the prison setting for the trial.
> And jurors who indicated a view unfavorable to defendant because of the trial's
> locale were excused for cause or eliminated through peremptory challenges.
> Finally, the trial court instructed the jurors that they had to start with the
> presumption that defendant was innocent, and the court explained the presumption
> to the jury.  Jurors are presumed to follow a trial court's instructions.  *People v
> Mahone*, 294 Mich App 208, 218; 816 NW2d 436 (2011).

(Mich. Ct. App. Op., ECF No. 11-10, PageID.493-494.)  The state appellate court's determinations

are in no way contrary to, or an unreasonable application of clearly established federal law.

Accordingly, even if Petitioner's claim were not barred by the doctrine of procedural default, it

would fail on the merits.  Petitioner is not entitled to habeas relief.

Under 28 U.S.C. § 2253(c)(2), the Court must determine whether a certificate of

appealability should be granted.  A certificate should issue if Petitioner has demonstrated a

"substantial showing of a denial of a constitutional right."  28 U.S.C. § 2253(c)(2).  The Sixth

Circuit Court of Appeals has disapproved issuance of blanket denials of a certificate of

appealability.  *Murphy v. Ohio*, 263 F.3d 466 (6th Cir. 2001).  Rather, the district court must

"engage in a reasoned assessment of each claim" to determine whether a certificate is warranted. *Id.* at 467.  Each issue must be considered under the standards set forth by the Supreme Court in *Slack v. McDaniel*, 529 U.S. 473 (2000).  *Murphy*, 263 F.3d at 467.  Consequently, I have examined each of Petitioner's claims under the *Slack* standard.  Under *Slack*, 529 U.S. at 484, to warrant a grant of the certificate, "[t]he petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong."  *Id.*  "A petitioner satisfies this standard by demonstrating that . . . jurists could conclude the issues presented are adequate to deserve encouragement to proceed further."  *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003).  In applying this standard, the Court may not conduct a full merits review, but must limit its examination to a threshold inquiry into the underlying merit of Petitioner's claims.  *Id.*

I find that reasonable jurists could not conclude that this Court's dismissal of Petitioner's claims would be debatable or wrong.  Therefore, I recommend that the Court deny Petitioner a certificate of appealability.

For the foregoing reasons, I recommend that the habeas corpus petition be denied. I further recommend that a certificate of appealability be denied.

Dated:   January 7, 2019                              */s/ Timothy P. Greeley*
                                                     Timothy P. Greeley
                                                     United States Magistrate Judge

## NOTICE TO PARTIES

Any objections to this Report and Recommendation must be filed and served within 14 days of service of this notice on you.  28 U.S.C. § 636(b)(1)(C); Fed. R. Civ. P. 72(b).  All objections and responses to objections are governed by W.D. Mich. LCivR 72.3(b).  Failure to file timely objections may constitute a waiver of any further right of appeal.  *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981); *see Thomas v. Arn*, 474 U.S. 140 (1985).